IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KEVIN BRODOCK,<br><br>    Plaintiff,<br><br>vs.<br><br>NEVRO CORP., a Delaware Corporation,<br><br>    Defendant. | CV 20-110-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Kevin Brodock ("Brodock") brings this action against Defendant Nevro Corp ("Nevro"), alleging wrongful termination of employment. (Doc. 6.)

Presently before the Court is Nevro's partial Motion to Dismiss (Doc. 10), which has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B). The motion is fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court **RECOMMENDS** Nevro's motion be **GRANTED in part and DENIED in part**.

I.  BACKGROUND

Nevro is a medical device company that employs salespeople to promote and sell its devices to hospitals and doctors in Montana. In September 2016, Nevro made an offer of employment to Brodock. Brodock accepted the offer, and

1

executed an Offer Letter Agreement dated September 7, 2016, which governed the terms of his employment.

In December 2018, Nevro approached Brodock and offered him a "Retainer Agreement," which Brodock alleges was presented as a more attractive employment contract because he had proved to be lucrative to the company. On December 14, 2018, Brodock executed an Amendment to the Offer Letter Agreement.

In December 2019, Nevro notified Brodock that it was terminating the Amendment Agreement for failure to meet sales quotas for the last two quarters of 2019. Brodock alleges that Nevro's motivation for terminating his employment was not based on Brodock's performance, but rather to cut costs. Brodock asserts Nevro created unreasonable quotas for the second half of 2019 to manufacture a reason for his termination. Brodock further alleges that following his termination, Nevro attempted to enforce a non-compete requirement and non-disparage provision.

On June 17, 2020, Brodock filed this lawsuit in Montana state court. (Doc. 6.) Thereafter, Nevro removed the action to this Court. (Doc. 1.) Brodock alleges claims for wrongful discharge (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); tortious interference with economic opportunity (Count IV); infliction of emotional distress

(Count V); and declaratory relief (Count VI).  Nevro now moves to dismiss Counts I and III-V for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and Count VI for lack of subject matter jurisdiction under Rule 12(b)(1.)

## II.   ANALYSIS

### A.   Motion to Dismiss Counts I and III-V under Rule 12(b)(6)

#### a.   Legal Standard

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. A plausibility determination is context specific, and courts must draw on judicial

experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *Wyler Summit P'ship*, 135 F.3d at 661.

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *Ritchie*, 342 F.3d at 907; *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). Nevertheless, the Court also may consider documents attached to the pleadings, and may consider documents incorporated into the pleadings by reference. *Ritchie*, 342 F.3d at 908. Documents may be incorporated by reference where "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.

For the purposes of this motion, the Court accepts as true the allegations contained in the Complaint. *Wyler Summit P'ship v. Turner Broadcasting Sys, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The Court will also consider the 2016 Offer Letter Agreement (Doc. 12-1) and 2018 Amendment to the Offer Letter Agreement (Doc. 12-3) without converting this motion to one for summary judgment, because the agreements are referred to in the Complaint, are central to Brodock's claims, and their authenticity has not been challenged.

### b. Count I – Wrongful Discharge Under Mont. Code Ann. § 39-2-912(2)

Brodock asserts a claim in Count I under the Wrongful Discharge from Employment Act ("WDEA"). The WDEA is "the exclusive remedy for a wrongful discharge from employment" under Montana law. Mont. Code. Ann. § 39-2-902. The WDEA, however, does not apply to a discharge "of an employee covered by . . . a written contract of employment for a specific term." Mont. Code Ann. § 39-2-912(2). But "[i]f an employment contract for a specific term also allows the employer to terminate at will (after completion of the probationary period), it is not a 'written contract for a specific term'" as contemplated in the WDEA. *Brown v. Yellowstone Club Operations, LLC*, 255 P.3d 205, 208 (Mont. 2011).

Nevro argues Brodock's WDEA claim under Mont. Code Ann. § 39-2-912(2) fails because he was covered by a written contract of employment for a specific term. Brodock counters that taken together, the 2016 and 2018 employment agreements extended his employment indefinitely, and thus, he was not under contract for a specific term.

Brodock was initially hired as an at-will employee. The 2016 Offer Letter Agreement provided that Brodock's employment was "at will" and not for any specific term. (Doc. 12-1 at 2.) The agreement stated in relevant part:

> Although we hope that your employment with NEVRO is mutually satisfactory, please note that your employment at NEVRO is "at will." This means that you may resign from NEVRO at any time with or

5

without cause, and NEVRO has the right to terminate your employment relationship with or without cause at any time. Neither this letter nor any other communication, either written or oral, should be construed as a contract of employment for any particular duration. The at-will nature of your employment can only be changed by written agreement, signed by you and the Chief Executive Officer of NEVRO. . . . Employment is at all times – before, during and after Sales Training – terminable on an at-will basis by either you or NEVRO.

(Doc. 12-1 at 2.)

Approximately two years later, however, Nevro and Brodock entered into the written Amendment to the Offer Letter Agreement. (Doc. 12-3.) Under the Amendment, certain terms of Brodock's employment were modified. Relevant here, the Amendment provided that Brodock's employment would be for a fixed term:

Employment Term

You will be employed by NEVRO for a fixed term commencing on the Effective Date and continuing until December 21, 2020 (the "Term"), subject to the conditions herein. For avoidance of doubt, this modifies your prior at-will employment status such that your employment during the Term is not at-will. Any language in the Offer Letter Agreement or any other Company document providing for at-will employment shall not apply to your employment during the Term.

If your employment by NEVRO continues beyond the Term and the parties have not entered into a written agreement extending the Term, your continued employment beyond the expiration of the Term will be at-will. During any such period of at-will employment, either you or NEVRO may terminate your employment at any time and for any reason, with our without Cause or Good Reason (as those terms are defined below), and with or without advance notice.

(Doc. 12-3 at 2-3.)

During the time the Amendment was operative (from December 14, 2018 to December 31, 2020), the Amendment clearly stated that Brodock's employment was "not at-will." (*Id.* at 2.) Although the Amendment provided that Brodock's employment could revert to at-will status, the Amendment stated that would occur only if Brodock's employment continued beyond the specified Term, and only if the parties had not entered into a written agreement extending the Term. Brodock was discharged in December 2019, within the Term. Accordingly, under the plain language of the Amendment, Brodock was "covered by . . . a written contract of employment for a specific term" at the time of his discharge. As such, the WDEA does not apply.

The Court therefore recommends that Count I be dismissed.

### c. Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing

Nevro next argues Brodock's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because the express terms of the 2016 Offer Letter Agreement and 2018 Amendment govern the parties' dispute. Brodock counters that the implied covenant applies here because the employment contract conferred discretion upon Nevro to determine what constituted "reasonable" quotas and what constituted "cause" for termination.

7

The Montana Supreme Court has developed the following framework for application of breach of implied covenant claims under Montana law:

> (1) every contract contains an implied covenant of good faith and fair dealing; (2) a breach of the covenant is a breach of the contract; (3) a breach of an express term of the contract is not a prerequisite to a breach of the implied covenant; (4) the conduct required by the implied covenant is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade; and (5) when one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached.

*Weldon v. Montana Bank*, 885 P.2d 511, 515 (Mont. 1994).

Whether Brodock has stated a plausible claim for breach of the implied covenant of good faith and fair dealing turns on the fifth prong – whether the contract confers discretion. The Montana Supreme Court has recognized that where an express contract term allows the employer to terminate an employee "without cause," the implied covenant does not apply. *Tvedt v. Farmers Ins. Group of Companies*, 91 P.3d 1, 7-8 (Mont. 2004) (holding the implied covenant did not apply because an at-will termination clause giving the employer an absolute right to terminate "without cause" "conferred no discretion"); *Farris v. Hutchinson*, 838 P.2d 374, 376-77 (Mont. 1992) (holding employee had no cause of action for breach of the implied covenant where the employer had terminated the employee without cause under an express provision of the contract).

On the other hand, where an employer exercises its discretion to terminate an employee "for cause," the employee may sustain a claim for breach of the implied covenant. *See e.g. Stark v. Circle K Corp.*, 751 P.2d 162, 166-67 (Mont. 1988) (allowing jury to decide whether the implied covenant was breached where the employer terminated the plaintiff for cause); *Prout v. Sears, Roebuck and Co.*, 772 P.2d 288, 292 (Mont. 1989) (holding that because employer stated termination was for cause, the employee must be given the opportunity to prove the stated cause was false); *Tvedt*, 91 P.3d at 7 (noting the implied covenant applies to "the interpretation of the words 'with cause' and the discretion of the employer thereunder.").

Here, the 2018 Amendment conferred on Nevro "the discretion to terminate . . . this Agreement during the Term for Cause." (Doc. 12-3 at 3.) The 2016 Offer Letter Agreement also gave Nevro the discretion to "reasonably determine" Brodock's performance goals. (Doc. 12-1 at 2.) Brodock alleges that Nevro breached the implied covenant of good faith and fair dealing by setting unreasonable quotas and terminating his employment without cause. Because these allegations implicate the discretion exercised by Nevro under the employment contract, Brodock has stated a plausible claim for breach of the implied covenant.

9

Accordingly, the Court recommends that Nevro's Motion to Dismiss should be denied as to Count III.

### d.     Count IV – Tortious Interference with Economic Opportunity

Nevro argues that Brodock's claim for tortious interference with economic opportunity should be dismissed because Nevro had a legal right to tell Brodock to follow his agreement not to compete with or disparage Nevro. Brodock counters that because Nevro breached the employment agreement, it had no legal right to threaten to enforce the non-compete and non-disparage clauses.

To state a claim for intentional interference with prospective economic advantage under Montana law, the plaintiff must show: "(1) an intentional and willful act; (2) calculated to cause damage to the plaintiff's business; (3) with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) the act results in actual damage or loss." *Wingfield v. Dep't of Public Health and Human Servs.*, 463 P.3d 452, 454 (Mont. 2020). Generally, a defendant is not liable for intentional interference if it had the legal right to act as it did. *Id.* (holding that where the defendant's action was expressly authorized by statute, its conduct did not amount to intentional interference with prospective economic advantage).

Here, Brodock alleges Nevro did not have a legal right to invoke the non-compete and non-disparage provisions because Nevro had materially breached the

10

contractual agreements related to Brodock's employment. (Doc. 6 ¶ 86.) For purposes of this motion to dismiss, Nevro has not contested the breach of contract claim. (Doc. 13 at 1, n.1.) Thus, taking Brodock's allegations as true, Brodock has alleged a plausible intentional interference claim. Assuming Nevro materially breached the employment agreements, Nevro would not have had the legal right to threaten to invoke the non-compete and non-disparage clauses. See e.g., *James Talcott Const., Inc. v. P&D Land Enterprises*, 141 P.3d 1200, 1207 (Mont. 2006) (under Montana case law, material breach relieves other party from further performance under the contract).

The Court cautions, however, that it does not find Nevro did, in fact, breach the employment agreements or intentionally interfere with prospective economic advantage. Rather, the Court is only finding that at this stage of the proceedings, under the applicable Rule 12(b)(6) standard, that Brodock has stated a plausible claim for relief. For example, Nevro may be able to establish that it had a good faith belief that its actions were justified, and therefore, is not liable for intentional interference. *See e.g. Rocky Mountain Biologicals, Inc. v. Microbix Biosystems, Inc.*, 986 F.Supp.2d 1187, 1199-200 (D. Mont. 2013) ("Montana law provides that action taken in the good faith belief that it is performed with right and justifiable cause cannot serve as the basis for a tortious interference claim, even it if turns out

that, in fact, the action is not legally justified.") Whether Nevro had such a good faith belief, however, cannot be determined at this point.

Accordingly, the Court recommends that Nevro's Motion to Dismiss should be denied as to Count IV.

### e. Count V – Infliction of Emotional Distress

Nevro moves to dismiss Brodock's claim for infliction of emotional distress on grounds that his allegations of distress fail to cross the threshold of severe or serious emotional distress. Brodock asserts that his allegations of emotional distress are sufficient to withstand a motion to dismiss.

Montana law recognizes an independent cause of action for infliction of emotional distress "under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission." *Sacco v. High Country Ind. Press., Inc.*, 896 P.2d 411, 429 (Mont. 1995). Brodock must ultimately satisfy a strict standard of evidentiary proof to succeed on his emotional distress claim. He will be required to establish that the emotional distress he suffered was "so severe that no reasonable person could be expected to endure it." *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 344 (Mont. 2013). The Montana Supreme Court has clarified, however, that "[i]n cases where there is physical manifestation of bodily harm resulting from emotional distress, such as PTSD, this bodily harm is

sufficient evidence that the emotional distress suffered by the plaintiff is genuine and severe." *Henricksen v. State*, 84 P.3d 38, 55 (Mont. 2004). Quoting from the Restatement (Second) of Torts, § 46, comment k., the court explained "'[n]ormally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which *in itself* affords evidence that the distress is genuine and severe." *Id.* (emphasis in original.)

The Court will initially determine whether the threshold level of emotional distress can be found. *Sacco*, 896 P.2d at 425. If so, "it is for the jury to determine whether, on the evidence, it has in fact existed." *Id.* At this stage of the proceedings, however, Brodock need only allege facts to plausibly support the claim that he has suffered serious or severe emotional distress, and the Court must draw all reasonable inferences from the facts in his favor. *Gen. Conf. Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989).

Here, Brodock alleges that as a result of Nevro's actions, he suffered "mental and emotional distress manifesting in physical symptoms of stress and anxiety" and "extreme emotional distress, manifesting physically." (Doc. 6 at ¶¶ 57, 95.) Brodock does not allege any additional facts regarding the duration or intensity of his emotional distress, which are important factors to be considered. See *Feller*, 299 P.3d at 345. Nevertheless, the allegations that he experienced

physical symptoms and manifestations of his severe emotional distress are sufficient at this early stage to state a plausible claim for infliction of emotional distress.  It remains to be determined, of course, whether the Brodock can produce sufficient evidence to meet the high bar of severe or serious emotional distress to present a viable claim as this case proceeds.

Accordingly, the Court recommends that Nevro's Motion to Dismiss should be denied as to Count V.

### B.     Motion to Dismiss Count VI Under Rule 12(b)(1)

#### a.     Legal Standard

Rule 12(b)(1) allows a defendant to raise the defense, by motion, that the Court lacks subject matter jurisdiction over an entire action or over specific claims alleged in the action.  A defendant may challenge the plaintiff's jurisdictional allegations under Rule 12(b)(1) in one of two ways, "as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations." *Atlantic Richfield Co. v. Christian*, 2016 WL 8677253, *3 (D. Mont. July 8, 2016); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  The Ninth Circuit has explained the difference between a facial and factual attack as follows: "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A facial attack is resolved in the same manner as a motion to dismiss under Rule 12(b)(6); the court accepts the plaintiff's allegations as true, draws all reasonable inferences in the plaintiff's favor, and determines whether the allegations are sufficient to invoke the court's jurisdiction. *Leite*, 749 F.3d at 1121. Whereas, a factual attack is resolved "under the same evidentiary standard that governs in the summary judgment context." *Id.* The defendant raises a factual attack "by introducing evidence outside the pleadings." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039.

    b.  **Count VI – Declaratory Relief**

Here, Nevro has raised a factual challenge to the Court's subject matter jurisdiction. Therefore, the Court may properly consider the declaration of Kathleen Determann (Doc. 12) and the exhibits attached thereto. *Safe Air*, 373 F.3d at 1039.

Nevro argues Brodock's claim for declaratory judgment should be dismissed because there is no case or controversy between the parties concerning the non-

compete or non-disparage agreements.  Nevro asserts that it agreed, through its in-house counsel in January 2020, that it would not enforce the non-compete agreement.  Nevro further asserts that the non-disparage agreement is unenforceable because Brodock never signed the Separation Agreement, which contains the non-disparage provision.

Brodock counters that there is a justiciable controversy between the parties because Nevro has not unequivocally represented it will not enforce the non-compete and non-disparage provisions.  Brodock points out that Nevro has argued it has a legal right to enforce the provisions in connection with the tortious interference claim in Count IV.  Brodock further notes that Nevro's assertion that it agreed to waive the non-compete provision is contradicted by the documents that show the waiver was contingent upon Brodock's execution of the Separation Agreement.

"Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a plaintiff must establish standing by showing 'that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.'"[1]  *Scott v. Pasadena Unified Sch. Dist.*, 306

---

[1] Where, as here, a case seeking declaratory relief under the Montana Declaratory Judgment Act, § 27-8-201 et seq., is removed to federal court based on diversity jurisdiction, the Court treats the claim for declaratory relief as if it were pled under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  *Hart v. PacificSource*

F.3d 646, 658 (9th Cir. 2002) citing *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A claim for declaratory relief under 28 U.S.C. § 2201 may be dismissed for lack of jurisdiction under Rule 12(b)(2) if it fails to present a true case or controversy. *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

On January 17, 2020, following Brodock's termination, Nevro's human resources department emailed Brodock and instructed him to "cease and desist" from contacting Nevro customers or sharing Nevro's confidential information outside the company. (Doc. 12-5 at 3.) The email indicated that Brodock was acting in violation of his Separation Agreement (which had not been signed[2]) and his Proprietary Information and Inventions Agreement. Subsequently, Nevro's Associate General Counsel, Kathleen Determann had a telephone conversation with Brodock during the week of January 27, 2020. (*Id.* at ¶12.) Determann avers that she told Brodock "that Nevro agreed not to enforce the non-compete or otherwise limit his ability to seek employment with another company in his area." (*Id.*) Thereafter, Determann sent Brodock an email summarizing their conversation. (Doc. 12-7 at 2.) In the email, Determann wrote:

---

*Health Plans*, 2019 WL 4044050, *2 (D. Mont. June 18, 2019), *report and recommendation adopted by*, 2019 WL 3244634 (D. Mont. July 19, 2019).

[2] Nevro acknowledges that Brodock never returned a signed copy of the Separation Agreement to Nevro. (Doc. 12 at ¶9.)

17

> Thank you for taking time to speak with me earlier this week.  As we agreed, here is a summary of that conversation: You agreed that you would (1) cease sharing any confidential business information with Nevro customers or initiating contact to discuss the terms of your termination/seek assistance with your future employment efforts; . . . and (3) you will sign and return your Separation Agreement and abide by its terms, including non-disparagement and not disclosing Nevro confidential business information.  With respect to this last item, Nevro has agreed it will not enforce the non-competition provision of your Offer letter.

(*Id.*)

Nevro's briefing tends to indicate that Nevro has agreed not to enforce the non-compete provision.  But Determann's email is not as clear.  It appears the agreement not to enforce the non-compete provision was contingent upon Brodock signing and returning the Separation Agreement, which he did not do.  As such, it is unclear whether Nevro's offer not to enforce the non-compete provision is binding, since Brodock did not sign the Separation Agreement.  Because it appears possible that Nevro could still seek to enforce the non-compete agreement, the Court finds there is a justiciable case or controversy between the parties.

With regard to the non-disparage provision, Brodock never signed the Separation Agreement which contains that provision. Nevertheless, on January 17, 2020, Nevro threatened to enforce the unsigned agreement.  Therefore, the fact that Brodock has not signed the Separation Agreement, does not establish that Nevro will not attempt or threaten to enforce the non-disparage provision.  Further, it does not appear that Determann agreed not to enforce the non-disparage provision.  To

18

the contrary, her email confirmation suggests that Brodock was expected to sign and abide by the Separation Agreement in exchange for relieving him of the non-compete provision. Thus, the Court finds there is an actual case or controversy between the parties as it relates to Brodock's claim for declaratory relief relating to the non-compete and non-disparage provisions.

Brodock also seeks declaratory relief establishing that "Nevro violated its express and/or implied obligations to Brodock by setting unreasonable quotas, failing to give Brodock the requisite notice of an alleged cause for termination, and failing to give Brodock an opportunity to cure the alleged deficiencies." (Doc. 6 at ¶ 102.) This aspect of Brodock's claim for declaratory relief is identical to his breach of contract claim. (*Id.* at ¶¶ 66-68.) Accordingly, it should be dismissed as duplicative. *See United Safeguard Dist. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F.Supp.3d 932, 96-61 (C.D. Cal. 2015) (dismissing declaratory relief claim that was identical to the plaintiffs' breach of contract claim); *StreamCast Networks, Inc. v. IBIS LLC*, 2006 WL 5720345, *4 (C.D. Cal. May 2, 2006) (noting various courts have held that "'[w]here determination of [a] breach of contract claim [will] resolve any question regarding interpretation of the contract, there is no need for declaratory relief,' and dismissal of a companion declaratory relief claim is appropriate.").

The Court, therefore, recommends that Nevro's Motion to Dismiss should be granted in part, and denied in part as to Count VI.

### III.  CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Nevro's Partial Motion to Dismiss (Doc. 10) be **GRANTED in part and DENIED in part**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 1st day of February, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge