IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| KEVIN BRODOCK,<br><br>               Plaintiff,<br><br>vs.<br><br>NEVRO CORP., a Delaware Corporation,<br><br>               Defendant. | CV 20-110-BLG-SPW<br><br>ORDER |

Before the Court are United States Magistrate Judge Timothy Cavan's Findings and Recommendations on Defendant Nevro Corp.'s ("Nevro") Motion for Summary Judgment (Doc. 72) and Plaintiff Kevin Brodock's Motion for Partial Summary Judgment (Doc. 66). (Doc. 129). Brodock was terminated from his employment contract with Nevro in December 2019 for failure to meet his sales quota in two consecutive quarters. Subsequently, Brodock sued, alleging that Nevro's quota calculation was unreasonable and several other violations. (Doc. 6). This Court previously dismissed Brodock's claim of wrongful discharge under Montana's Wrongful Discharge from Employment Act ("WDEA"), holding that because Brodock was a contract employee, he fell outside of the ambit of the WDEA. (Doc. 26).

1

Nevro moved for summary judgment on Brodock's claims of breach of contract, breach of the covenant of good faith and fair dealing, tortious interference, infliction of emotional distress, and claims for declaratory relief. Judge Cavan recommended denying the motion as to breach of contract, breach of the covenant of good faith, and tortious interference. (Doc. 129 at 11, 18, and 28). Judge Cavan recommended granting summary judgment on the emotional distress claim. (Doc. 129 at 31). On the declaratory relief claims, Judge Cavan recommended dismissing the claim relating to the non-compete agreement and denying summary judgment as to the non-disparagement claim. (Doc. 32). Finally, Judge Cavan recommended denying Brodock's motion for summary judgment as to Nevro's counterclaims. (Doc. 129 at 36).

Nevro timely filed its objections to the recommendations. (Doc. 130). Nevro asserts that Judge Cavan improperly determined that certain factual disputes were material and that he mistakenly applied a non-existent non-disparagement agreement when recommending against summary judgment as to the tortious interference and remaining declaratory relief claims. (Doc. 130 at 8, 19, and 26). Brodock neither responded to Nevro's objections nor filed objections of his own. For the following reasons, the Court adopts Judge Cavan's Findings and Recommendations in full.

2

I.   **Background**[1]

Brodock was originally hired by Nevro in September 2016. Nevro operates as a medical device manufacturer and marketer and employs approximately 400 salespeople. As a condition of hire, Brodock signed a one-year non-compete agreement and a Proprietary Information and Inventions Agreement ("PIIA"), which obligated him to keep all proprietary information confidential and barred him from ever using proprietary information to attempt to negatively influence Nevro's customers from using its products or services.

Brodock exceled at his sales position during his first two years; by the end of 2018, he was ranked 6th in the salesforce based on percentage of quota attainment. In December 2018, Nevro offered Brodock a retention agreement, and Brodock accepted. The agreement stated that Brodock would "be employed by NEVRO for a fixed term commencing on the Effective Date and continuing until December 21, 2020 (the 'Term'), subject to the conditions herein." The agreement modified Brodock's status from an at-will employee to a contract employee for the duration of the fixed term. The agreement also stated that if Brodock failed to reach 70% of his assigned quotas in consecutive quarters, the agreement would be subject to termination for cause. The quotas were to be "reasonably determined" by Nevro.

---

[1] The facts, to the extent they are not objected to, are adopted from Judge Cavan's order. For convenience and clarity, those facts are summarized here. To the extent that Nevro objects to any of Judge Cavan's factual determinations, those objections will be addressed in the Discussion section of this Order.

3

In the final two quarters of 2019, Brodock failed to reach 70% of his quotas, and Nevro informed Brodock it would terminate his employment as a result.

Nevro offered Brodock a separation agreement which that would have given him a severance payment of $5,384.00 in exchange for a release of all claims against Nevro and a non-disparagement provision. Brodock did not sign the agreement, but emailed Nevro executives and asked to be released from his non-compete agreement. After a conversation between the two parties, Nevro's Associate General Counsel, Kathleen Determann, emailed Brodock the following:

> You agreed that you would: (1) cease sharing any confidential business information with Nevro customers or initiating contact to discuss the terms of your termination/seek assistance with your future employment efforts; . . . and (3) you will sign and return your Separation Agreement and abide by its terms, including non-disparagement and not disclosing Nevro confidential business information. With respect to this last item, Nevro has agreed that it will not enforce the non-competition provision of your Offer Letter.

Brodock did not respond to the January 31, 2020, email, and had no further contact with Nevro regarding the non-compete provision, the Separation Agreement, or his potential employers.

In June 2020, Brodock filed this suit, claiming: (1) wrongful discharge; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) tortious interference with economic opportunity; (5) infliction of emotional distress; and (6) declaratory relief that the non-compete and non-disparagement agreements cannot be enforced. This Court has already dismissed

Count 1, holding that the WDEA does not apply to Brodock because he was a contract employee. (Doc. 26 at 6-7).

## II. Legal Standards

### A. Standard of Review

Litigants are entitled to de novo review of those findings or recommendations to which they object. 28 U.S.C. § 636(b)(1). When neither party objects, this Court reviews a magistrate's Findings and Recommendations for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). A party makes a proper objection "by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority such that the district court is able to identify the issues and the reasons supporting a contrary result. *Lance v. Salmonson*, 2018 WL 4335526, at *1 (D. Mont. Sept. 11, 2018). A district court, when conducting review of a magistrate's recommendations, may consider evidence presented for the first time in a party's objections, but it is not required to. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).

### B. Summary Judgment Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### III. Discussion

Nevro objects to all of Judge Cavan's adverse findings but, broadly, its objections fall into three categories. Nevro asserts that Judge Cavan wrongly determined that certain factual disputes were material when determining that the claims for breach of contract and breach of the covenant of good faith and fair dealing were inappropriate for summary disposition. (Doc. 130 at 8). Nevro claims that it has unconditionally released Brodock from the non-compete agreement, and that there are no fact issues regarding the tortious interference

claim, contrary to Judge Cavan's finding. (Doc. 130 at 21). Finally, and similarly, Nevro argues that because it released Brodock from the non-compete and non-disparage agreements, there is no live controversy suitable for declaratory judgment. (Doc. 130 at 27). The Court will address each objection in turn.

*A. Claims II and III*

Nevro asserts that Judge Cavan incorrectly relied on several alleged fact disputes regarding whether the quotas Nevro set were reasonable. (Doc. 130 at 9). Nevro argues that allowing a dispute over the precise reasonableness of the quotas runs contrary to Montana caselaw holding that courts may not become overly involved in day-to-day management decisions or second-guess an employer's internal decision making regarding its expectations for its employees' performance. *See McConkey v. Flathead Elec. Co-op.*, 125 P.3d 1121, 1126 (Mont. 2005); *Smith v. Charter Commc'ns., Inc.*, 2021 WL 236660, at *3 (D. Mont. 2021) *question certified on other grounds* 22 F.4th 1134 (9th Cir. 2022). But the cases Nevro relies upon are not contract law cases; they apply the WDEA or similar laws and are not analogous to the instant claim.[2] "Good cause" is a term of art under the WDEA requiring employers to demonstrate rational reasons supporting a non-provisional employee's termination. But here, it is the contract

---

[2] The Court notes that, previously, regarding its motion to dismiss, Nevro asserted and prevailed on its claim that Brodock was not covered under the WDEA. Nevro now argues that the WDEA definitions should apply to the contract dispute. Nevro cannot have it both ways.

7

that governs, not the WDEA. The contract states that the quotas were to be "reasonably determined" by Nevro.

Judge Cavan correctly concluded that the reasonability of the quotas set under the contract is a fact issue. He stated that Brodock produced evidence from which a reasonable fact-finder could determine that the quotas were not reasonably determined, including irregularities in the quota-setting process and Brodock having the second-highest quota in the company despite a reduction in his sales territory. (Doc. 129 at 13-14). The Court agrees that, viewing the evidence in the light most favorable to Brodock, there is a disputed fact issue as to the reasonability of the quotas set for the second half of 2019 and that summary judgment is therefore inappropriate.

Much of the same analysis applies to the good faith and fair dealing claim; Judge Cavan correctly identified that many material disputes exist, precluding summary judgment. (Doc. 129 at 23). Nevro argues that it was not unreasonable for it to calculate quotas ahead of time or calculate them using data points that are arguably outliers. Nevro argues that it was not unreasonable to disregard Brodock taking on additional non-sales roles or the timing of its decision to terminate the agreement. (Doc. 130 at 14-16). But these arguments illustrate the fact-intensive nature of the claim and why summary judgment is inappropriate on the breach of covenant claim as well.

B. *Claim IV*

Nevro argues that Judge Cavan incorrectly determined that fact issues preclude summary judgment on Brodock's tortious interference claim because, in its view, none of the disputed fact issues, even if resolved in Brodock's favor, would support a tortious interference claim as a matter of law. (Doc. 130 at 19). Specifically, Nevro asserts that Brodock cannot show that Nevro acted with an unlawful purpose or to intentionally harm Brodock. *See Wingfield v. Dep't of Pub. Health and Human Servs.*, 463 P.3d 452, 454 (Mont. 2020). Judge Cavan relied on an email from Nevro to Brodock where it told Brodock to cease and desist contact with Nevro customers based on the (unsigned) separation agreement and the PIIA. (Doc. 129 at 27-28).

Montana law requires that a plaintiff must demonstrate that a defendant acted without right or justification to maintain an action for tortious interference. *See Phillip R. Morrow, Inc. v. FBS Ins. Montana-Hoiness Labar, Inc.*, 770 P.2d 859, 864 (Mont. 1989). Nevro asserts that Brodock submitted no evidence showing that Nevro acted without right or justification "in reminding Plaintiff of his legal obligations under the PIIA." (Doc. 130 at 24-25). But this argument overlooks the issue of disputed fact regarding whether Nevro was attempting to enforce only the PIIA. The email itself does not make explicit what confidential information Brodock allegedly shared versus what information was merely

9

disparaging. (*See* Doc. 75-33 at 2). This is a key factual issue that must be resolved by a jury regarding whether Nevro acted without a right or justification. There is an additional fact question as to whether Nevro unconditionally released Brodock from the non-compete, given the conditional language in the email between Brodock and Nevro's legal counsel. Judge Cavan correctly determined that this factual issue precludes summary judgment on this count.

## C. *Claim VI*

Finally, Nevro objects to Judge Cavan's determination that there is a justiciable controversy relating to Brodock's claim for declaratory relief regarding the non-disparagement agreement. (Doc. 130 at 26-27). In its objection, Nevro asserts that there is no valid non-disparagement agreement, Nevro never invoked and will not invoke the unsigned separation agreement, and that it does not consider that agreement enforceable. (Doc. 130 at 27). Relying on these representations, the Court agrees with Nevro that there is no longer a justiciable declaratory dispute regarding any non-disparagement agreement and reverses Judge Cavan's determination denying summary judgment on that claim.

## IV.  Conclusion

Based on the foregoing, IT IS ORDERED that Judge Cavan's Findings and Recommendations (Doc. 129) are ADOPTED IN PART and REJECTED IN PART.

IT IS FURTHER ORDERED that Nevro's Motion for Summary Judgment (Doc. 72) is DENIED as to Claims II, III, and IV, and GRANTED as to Claims V and VI. Brodock's Motion for Partial Summary Judgment (Doc. 66) is DENIED.

DATED this 30th day of September, 2022.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge